## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES D. NEWTON, | ) | Case No. 1:24-cv-00027 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jennifer Dowdell Armstrong |
| KIMBERLY KARDASHIAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Charles Newton filed suit without a lawyer against ten Defendants alleging a conspiracy to commit computer hacking violations, copyright infringement, assault, invasion of privacy, intentional infliction of emotional distress, tortious interference, and fraud. The complaint asserts that Defendants conspired to hack and spy on Plaintiff and killed Plaintiff's cousin as a means of threatening him.  Various Defendants move to dismiss the complaint for lack of personal jurisdiction, and all for failure to state a claim.  For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss.

## STATEMENT OF FACTS

On this motion to dismiss, the Court takes the following allegations as true and construes them in favor of Plaintiff as the non-moving party.

### A.    Screenplays

In early 2018 Plaintiff Charles Newton moved to Los Angeles, California from Cleveland, Ohio and began to write screenplays.  (ECF No. 1, ¶¶ 36–37, PageID #7.)

Mr. Newton wrote two screenplays: *Emerging Cleveland Strangler: The Vernice Crutcher Untold Story* and *I Know What You Did to Me*. (*Id.*, ¶¶ 37–39, PageID #7.) The former tells the story of Mr. Newton's deceased girlfriend, whom he believes was an early victim and survivor of Anthony E. Sowell, a notorious serial killer in Cleveland colloquially called the "Cleveland Strangler." (*Id.*, ¶ 92, PageID #31.) Mr. Newton allegedly reached out to Defendant Beyoncé Knowles-Carter, Defendant Halle Berry, and actress Thandiwe Newton to play his girlfriend, the leading female role. (*Id.*, ¶ 38, PageID #7; *id.*, ¶¶ 184-85, PageID #70-71.) Mr. Newton believes that Mrs. Knowles-Carter accepted the role through certain actions and that Newton expressed interest in the role. (*Id.*, ¶ 222, PageID #89; *id.*, ¶ 185, PageID #71.)

In November 2018, Mr. Newton allegedly contacted Kim Kardashian, Khloe Kardashian, Mrs. Kardashian-Barker, Kris Jenner, Kylie Jenner, Kendall Jenner (collectively, the "Kardashian-Jenner Defendants") by Instagram direct message asking them to star in *I Know What You Did to Me*, a screenplay written for them and inspired by the movie *I Know What You Did Last Summer*. (*Id.*, ¶ 39, PageID #7.) Mr. Newton did not receive any explicit or implicit responses from the Kardashian-Jenner Defendants accepting the screenplay. (*Id.*, ¶ 42, PageID #8.)

### B.  Hacking and Cyberstalking

In March 2020, Mr. Newton claims he noticed potential cyber hacking and cyberstalking, and he suspected that the Kardashian-Jenner Defendants were behind the suspicious activity. (*Id.*, ¶¶ 44–45, PageID #11.) He alleges that the Kardashian-Jenner Defendants started embedding hidden messages in their Instagram posts,

referencing his private information and professional projects. (*Id.*, ¶¶ 45–48, PageID #11–13.) Additionally, Mr. Newton believes that Defendant Kanye West, Mrs. Knowles-Carter, Defendant Shawn Carter, and Ms. Berry joined in a conspiracy with the Kardashian-Jenner Defendants to interfere with his career and threaten him. (*Id.*, PageID #67.) According to Mr. Newton, his attempts to seek legal recourse through California State courts have resulted in escalated threats, ultimately leading to the alleged kidnapping and murder-for-hire of his cousin. (*Id.*, ¶¶ 5–10, PageID #2–3; *id.*, ¶ 254, PageID #103.) Mr. Newton interprets Defendants' subsequent Instagram posts as mocking his cousin's death through cryptic messages and fears he may be the next target. (*Id.*, ¶ 249, PageID #101; *id.*, ¶ 254, PageID #103; *id.*, ¶ 295, PageID #117.)

To support his allegations, Mr. Newton provides numerous examples of his perceived online communications with Defendants. The Court recounts several to illustrate Mr. Newton's allegations.

1. In November 2018, a photo of Mr. West with his tongue out posted on Instagram by Kanye West fans references a strangulation victim, which Mr. Newton alleges alludes to his copyrighted true crime story, *Cleveland Strangler*. (*Id.*, ¶¶ 148–49, PageID #53.) Mr. Newton accuses Kim Kardashian of infringing on his copyrighted story *Cleveland Strangler*, too, by wearing jewelry and standing in front of a car in Instagram posts because a character in the script had her jewelry stolen and was hit by a car. (*Id.*, ¶¶ 150–58, PageID #54–56.)

2.      In March 2020 Mr. Newton posted "cyber traps" to test his belief that Defendants were cyberstalking and hacking him.  Mr. Newton believes Kylie Jenner cryptically communicated her alleged illicit activity through her Instagram posts. (Id., ¶¶ 44–48, PageID #11–13.)  Mr. Newton cites examples such as a photo of Kylie Jenner posted to Instagram wearing a Prada bucket hat a day after Mr. Newton posted a screenshot from the movie *The Devil Wears Prada* on Instagram.  (*Id.*, ¶¶ 45–46, PageID #11–12.)

3.      In May 2020, Mrs. Kardashian-Barker's posted a picture on Instagram of her pulling at the lapel of a green leather coat, the same color as Mr. Newton's USB drive.  (*Id.*, PageID #44.)  Mr. Newton claims this image communicates that the Kardashian-Jenner Defendants are instructing Mr. Newton to cease his lawsuit.  (*Id.*, ¶¶ 137–39, PageID #44.)

4.      In April 2020, Kim Kardashian posted a mirror selfie in a black top on Instagram, which Mr. Newton takes as cyberstalking because he was in his bathroom at a similar time wearing a black towel and using his phone.  (*Id.*, ¶ 165, PageID #61.)  Also, he found dangerous malware on his computer in December 2021 and pins the malware attacks on the Kardashian-Jenner Defendants.  (*Id.*, ¶¶ 49–50, PageID #14–15.)

5.      Mr. Newton alleges that Mrs. Knowles-Carter implicitly and fraudulently agreed to take on the role in *Cleveland Strangler* with the intention of hindering his casting efforts.  (*Id.*, ¶¶ 214–18, PageID #88.; *id.*, ¶ 230, PageID #92; *id.*, ¶ 238, PageID #96.)  According to Mr. Newton, Mrs. Knowles-Carter allegedly

accepted the role through Instagram posts in September 2021 by giving a thumbs-up sign. (*Id.*, ¶¶ 214–18, PageID #88.)  After these photos, Mr. Newton claims Mrs. Knowles-Carter continued to audition for the role through various Instagram posts. (*Id.* ¶¶ 231–33.) Amid these alleged auditions, Kim Kardashian posted a selfie with fake face tattoos of a broken heart and a bumble bee. (*Id.*, ¶¶ 227–30, PageID #91–92.)  Mr. Newton alleges that Kim Kardashian's use of fake tattoos indicates Mrs. Knowles-Carter's deceptive acceptance of his casting offer and her involvement in a conspiracy to hinder his casting efforts. (*Id.*, ¶ 230, PageID #92; *id.*, ¶¶ 238, PageID #96.)

### C.   Murder-for-Hire Plot

Mr. Newton also alleges facts that he believes support Defendants' role in the death of his cousin.  On April 14, 2023, Mr. Newton's cousin, Thaddeus Coleman, disappeared. (*Id.*, ¶ 71, PageID # 24.)  Mr. Coleman's body was found on April 29, 2023, and the medical examiner determined that Mr. Coleman committed suicide by drowning. (*Id.*, ¶ 105, PageID #35; *id.*, ¶ 109, PageID #37.)

Mr. Newton believes various Defendants revealed their role in a murder-for-hire plan of Mr. Coleman. (*Id.*, ¶¶ 56–64, PageID #17–20.)  In March 2023, Mr. Newton noticed alleged cryptic messages, which he interpreted as directed at him, on the Instagram feeds of Mr. West and Kim Kardashian. (*Id.*)  Mr. Newton cites examples such as Mr. West appearing as a fisherman in an Instagram post and Kim Kardashian dressed in an outfit resembling fish scales. (*Id.*)  Mr. Newton believes these posts foreshadowed Mr. Coleman's death, whose body was found by a

5

fisherman in Lake Erie.  (*Id.*, ¶¶ 105–08, PageID #35–36.)  Mr. Newton believes the details of Mr. Coleman's death to be a reference to his screenplay and the fisherman in *I Know What You Did Last Summer*.  (*Id.*, ¶¶ 105–09, PageID #35–37.)

Further, Mr. Newton alleges that the blue outfit Kim Kardashian wore on April 14, 2023 implied livor mortis, the process of dead bodies showing bluish-purple discoloration.  (*Id.*, ¶¶ 74–75, PageID #25–26.)  Implicating Mrs. Knowles-Carter in the plot, Mr. Newton claims she maliciously reenacted private photos of his cousin's demise on Instagram through her wavy hair, signaling water waves; making a peace sign, meaning good-bye; making "fish lips," referencing Lake Erie; and a door in the background of the photos, symbolizing a closed casket.  (*Id.*, ¶¶ 248–49, PageID #101–02.)  Mr. Newton believes that Defendants continue to threaten that he will be next.  (*Id.*, ¶ 295, PageID #117.)

## STATEMENT OF THE CASE

Previously, Mr. Newton sued Defendants in the California State courts.  (ECF No. 38-1, PageID #486–87.)  In July 2020, Plaintiff filed actions against the Kardashian-Jenner Defendants, accusing them of hacking his devices and invading his privacy, painting him in a false light, and publicly disclosing his private information through Instagram posts.  (ECF No. 37-1, PageID #315.)  Plaintiff filed another action in March 2022 against the Kardashian-Jenner Defendants alleging the same claims, and later joined Mrs. Knowles-Carter, Mr. Carter, Ms. Berry, and Mr. West, alleging additional claims of intentional infliction of emotional distress, conspiracy, and fraud.  (ECF No. 37-6, PageID #371.)  Mr. Newton voluntarily

6

dismissed both California State cases.  (ECF No. 37-4, PageID #353; ECF No. 37-8, PageID #464.)

On January 5, 2024, Plaintiff filed this suit, which presents an iteration of his prior actions in the California courts.  Plaintiff names as Defendants:  (1) Kimberly Kardashian; (2) Khloe Kardashian; (3) Kris Jenner; (4) Kourtney Kardashian-Barker; (5) Kylie Jenner; (6) Kendall Jenner; (7) Halle Berry; (8) Beyoncé Knowles-Carter; (9) Shawn Carter; and (10) Kanye West.  (ECF No. 1, PageID #1.)  Also, he names "John & Jane Does 1–100."  (*Id.*)

His complaint brings the following claims against the following Defendants: (1) violation of the Computer Fraud and Abuse Act against all Defendants; (2) copyright infringement against Kim Kardashian, Kylie Jenner, Mrs. Knowles-Carter, and Mr. West; (3) invasion of privacy against all Defendants; (4) civil conspiracy against all Defendants; (5) tortious inference "with prospective economic advantage" against the Kardashian-Jenner Defendants and Mrs. Knowles-Carter; (6) fraudulent misrepresentation against Mrs. Knowles-Carter;  (7) intentional infliction of emotional distress against all Defendants; and (8) assault in violation of 18 U.S.C. § 13(a)(1) against all Defendants.

On February 27, 2024 the Kardashian-Jenner Defendants, as well as Mrs. Knowles-Carter and Ms. Berry, filed a joint motion to dismiss for lack of personal jurisdiction and for failure to state a claim.  (ECF No. 38.)  As part of their motion, Defendants requested that the Court take judicial notice of the prior complaints Plaintiff brought in the California courts.  (ECF No. 36.)  Due to

difficulties perfecting service, Mr. Carter was not a part of the initial filings and, on March 18, 2024, sought to join the joint motion that the other Defendants filed.  (ECF No. 49.)

On April 5, 2024, Mr. Newton filed notice of and a request for motion to leave to file an amended and supplemental pleading.  (ECF No. 52.)  Though this motion indicates that Mr. Newton wants to respond to certain arguments Defendants made for dismissal (*see, e.g.*, *id.*, PageID #886), he also represents that he wishes to advance new evidence to support his claims (*id.*, PageID #887–88).  Later, he filed a declaration in support of this motion.  (ECF No. 57.)  Also, he filed an "amended supplemental pleading memorandum, points, and authorities," which constitute an additional brief opposing Defendants' motions.  It does not appear to be proposed amendment, which he has not submitted.

Mr. Newton attempted to serve Mr. West multiple times.  (*See, e.g.*, ECF No. 42; ECF No. 43; ECF No. 66; and ECF No. 69.)  Meanwhile, the Court set a deadline of July 10, 2024 for Plaintiff to serve Mr. West.  (ECF No. 68.)  On June 29, 2024, Plaintiff filed proof of service on Mr. West.  (ECF No. 71.)  When Mr. West did not appear, Plaintiff moved for a default judgment against Mr. West.  (ECF No. 72.)

## ANALYSIS

*Pro se* pleadings, those a litigant prepares without the assistance of counsel, are liberally construed.  *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The Court recognizes that *pro se* pleadings are held to a "less stringent standard[] than formal pleadings drafted by

lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the "lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Liberal construction for *pro se* litigants does not "abrogate basic pleading" requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008). Although specific facts are not required, to meet the basic minimum notice pleading requirements, Plaintiff's complaint must give the defendants fair notice of what the plaintiff's legal claims are and the factual grounds on which they rest. *Id.*

## I. Personal Jurisdiction

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant Beyoncé Knowles-Carter moves to dismiss the claims against her for lack of personal jurisdiction. (ECF No. 38.) Mr. Carter moves to join that motion. (ECF No. 49.) In the interest of judicial economy, the Court **GRANTS** his motion to do. Under Rule 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over every defendant. "Personal jurisdiction must be analyzed and established over each defendant independently." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citation omitted). "Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiff makes no argument that Mr. Carter or Mrs. Knowles-

Carter are subject to the general jurisdiction of Ohio, and no basis for the exercise of general jurisdiction over either presents itself in the record.

To establish specific personal jurisdiction over a defendant, the Court must find that (1) the defendant is amenable to service of process under the State's long-arm statute; and (2) the exercise of personal jurisdiction is proper under the Due Process Clause. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). No matter if "jurisdiction arises under 28 U.S.C. §§ 1331 or 1332, a plaintiff must satisfy the forum state's requirements for personal jurisdiction." *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 958 (N.D. Ohio 2018). But that is not enough. The exercise of personal jurisdiction must satisfy the basic constitutional requirements. "Even if a defendant's contact with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021).

Where, as here, a defendant files a properly supported motion to dismiss for lack of personal jurisdiction, the district court may "decide the motion on the materials submitted, permit discovery in order to aid in deciding the motion, and/or [] conduct an evidentiary hearing." *Georgalis*, 324 F. Supp. 3d at 958 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Based on the briefs and the record, the Court exercises its discretion to decide the motions without an evidentiary hearing.

10

Therefore, the Court considers the pleadings and declarations in the light most favorable to Plaintiff. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). "[A] court disposing of a Rule 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal," but may consider a defendant's undisputed factual assertions. *CompuServe*, 89 F.3d at 1262; *Theunissen*, 935 F.2d at 1459. And Plaintiff "need only make a *prima facie* case that the Court has jurisdiction." *Conn*, 667 F.3d at 711. In this procedural posture, Plaintiff's burden is "relatively slight." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). Still, a *prima facie* showing of jurisdiction requires "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 653 (N.D. Ohio 2019) (quotation and citation omitted).

## I.A.   Ohio's Long-Arm Statute

In April 2021, the Ohio General Assembly extended the State's long-arm statute to the limits of the Constitution. Previously, the statute authorized the exercise of personal jurisdiction over an out-of-State defendant under one of nine enumerated criteria. *See* Ohio Rev. Code § 2307.382(A). For this reason, courts

construed the statute as foreclosing the exercise of general jurisdiction over non-resident defendants.  *See Conn*, 667 F.3d at 717.  After the amendment, the statute now provides that "a court may exercise personal jurisdiction over a person on any basis consistent with . . . the United States Constitution."  Ohio Rev. Code § 2307.382(C).  This amended language appears to allow the exercise of general jurisdiction over non-resident defendants where the Constitution permits.  *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 827 n.2 (S.D. Ohio 2021); *see also 3M Co. v. Premium Contractor Sol.*, LLC, No. 3:20-CV-443, 2021 WL 3737908, at *4 (S.D. Ohio Aug. 24, 2021).

However, this amendment does not collapse the specific jurisdiction analysis into a single due-process inquiry.  *Premier Prop. Sales*, 539 F. Supp. 3d at 827 n.2; *but see Mesa Indus., Inc. v. Charter Indus. Supply, Inc.*, No. 1:22- CV-160, 2022 WL 1044720, at *3 n.1 (S.D. Ohio Apr. 7, 2022) ("[T]here is now some question whether a court must separately analyze the jurisdictional exercise under both the long-arm statute and the Due Process Clause, or whether these inquiries have merged.").  After all, the statute on its face still contains the list of nine enumerated bases for exercising personal jurisdiction over an out-of-state defendant.

Of the nine enumerated criteria in the Ohio long-arm statute, Plaintiff relies on two.  (ECF No. 46, PageID #671.)  First, Plaintiff argues that under Section 2307.382(A)(3), Defendants "caused tortious injury by an act or omission in this state" by posting photos on Instagram.  (*Id.*)  On its face, however, this provision of the long-arm statute does not apply.  Plaintiff alleges he suffered an injury in Ohio,

but he does not allege that Defendants committed any acts or omissions in Ohio, such as taking photographs or posting on Instagram.

Second, Plaintiff argues that Section 2307.382(A)(7) reaches Defendants for "causing tortious injury to any person by a criminal act, any element of which takes place in this state, . . . ." (ECF No. 46, PageID #671.)  But Plaintiff makes only conclusory allegations that either Defendant committed a crime, let alone that an element of any criminal act took place in Ohio.  Indeed, he argues only that Mr. Carter and Mrs. Knowles-Carter were complicity in criminal activity.  (*Id.*)  Again, however, that criminal activity or these Defendants' alleged complicity in it lacks any connection to Ohio other than conclusory allegations.  Even construed in his favor in the present procedural posture, Plaintiff has failed establish a *prima facie* case of personal jurisdiction as to Mr. Carter and Mrs. Knowles-Carter.

### I.B.    Due Process

Even if Plaintiff were to show that Ohio has authorized the exercise of personal jurisdiction over either of these Defendants through any provision of its long-arm statute, the exercise of that jurisdiction must still not offend the requirements of the federal Constitution.  Specific personal jurisdiction comports with constitutional due process where "the defendant has sufficient minimum contacts such that traditional notions of fair play and substantial justice are not offended."  *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (cleaned up).

In making this determination, courts examine whether (1) the defendant purposefully availed itself of the privilege of acting or causing a consequence in the

forum State; (2) the cause of action arises from the defendant's activities there; and (3) the defendant's acts or the consequences of those acts have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)); *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989).  Purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Maintenance of the suit as a result of the defendant's contacts with the forum State must also not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945).  These requirements aim at protecting non-resident defendants from litigating in a distant and inconvenient forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Plaintiff alleges that Defendants directed social media posts at him where he resides, in Ohio.  Plaintiff argues that this conduct constitutes purposeful availment that allows the exercise of personal jurisdiction over these Defendants.  The Sixth Circuit has held that tagging someone directly in a post on a social media site suffices to establishes jurisdiction over the person who made the post. *Johnson v. Griffin*, 85 F.4th 429, 435 (6th Cir. 2023).  Conversely, the Sixth Circuit has held that a person who makes social media posts that are not direct communications with a plaintiff do

14

not avail the speaker of the benefits and protections of State law. *Blessing v. Chandrasekhar*, 988 F.3d 889, 906 (6th Cir. 2021). Here, construed in Plaintiff's favor, the record places the posts and communications at issue closer to the latter end of the spectrum. No post at issue directly tags, mentions, or refers to Plaintiff. Instead, Defendants post for their general social media followers and audiences. Even if those postings contained real or imagined hidden messages, their implicit nature fails to evidence any availment of the benefits and protections of Ohio law. Accordingly, the Court concludes that Plaintiff has not established personal jurisdiction over Defendant Beyoncé Knowles-Carter or Defendant Shawn Carter. The Court **GRANTS** their motions to dismiss. (ECF No. 38.)

## II.    Motion to Dismiss

In any civil action, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5. Although Plaintiff proceeds

15

*pro se*, his pleadings must still give Defendants fair notice of his claims and legal arguments. *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008).

When analyzing a complaint under this standard, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were "not well-pleaded[,]" "their conclusory nature 'disentitles them to the presumption of truth'"). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

16

On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although it may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). Accordingly, the Court limits its review to matters properly included in the pleadings and, as discussed below, those subject to judicial notice.

### II.A.   Computer Fraud and Abuse Act

Plaintiff brings a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g). Generally, that statute allows for a lawsuit against a person who intentionally access a computer without authorization. Plaintiff alleges that all Defendants accessed his protected computer without authorization through circumstances, hidden messages, and coincidences that he claims show Defendants accessed his laptop and home internet service. (ECF No. 1, ¶¶ 137–45, PageID #44–50.) Specifically, he references an Instagram post by Kylie Jenner in a Prada hat a day after he posted a photograph from the movie *The Devil Wears Prada* to his Instagram account on March 11, 2020. (*Id.*, ¶¶ 44–48, PageID #11–13.) He points to May 22, 2020 when Ms. Kardashian-Barker posted photographs on Instagram in a green leather jacket, the same color as his flash drive, which Plaintiff takes as evidence of hacking. (*Id.*, ¶¶ 137–40, PageID #44–45.) Also, he provides his 2020 home internet password, "iseeyou081097,"which includes Kylie Jenner's birthday. (*Id.*, ¶ 141, PageID #46.) She then posted an Instagram photograph on September 10, 2020, a date that Plaintiff takes as covertly including her birthday and as evidence

of cyberhacking.  (*Id.*)  Finally, he alleges that all Defendants hacked his computer after his Microsoft Windows Defender found multiple malware attacks on his laptop.  (*Id.*, ¶¶ 49–50, PageID #14–15; *id.*, ¶ 145, PageID #49–50.)

Under Section 1030(g), an action must be brought within two years of "the date of the act complained of or the date of the discovery of the damage."  Although these events all date from 2020, Plaintiff did not file suit until January 5, 2024.  (ECF No. 1.)  He alleges that "ALL Defendants" began hacking his computer as early as 2018.  (*Id.*, ¶ 167, PageID #62.)  His allegations demonstrate that Mr. Newton discovered the computer hacking of which he complains on or about the time it occurred.  Indeed, he laid cyber traps to catch the perpetrators.  (*Id.*, ¶ 140, PageID #46.)  Because Plaintiff discovered the alleged hacking and the damage it allegedly caused more than two years before filing this suit, the Court finds that Plaintiff's claim under the Computer Fraud and Abuse Act is time-barred.  Accordingly, the Court dismisses this claim with prejudice.

### II.B.  Copyright Infringement

Plaintiff brings a claim of copyright infringement against four Defendants: Kim Kardashian, Kylie Jenner, Mrs. Knowles-Carter, and Mr. West.  Plaintiff contends that Defendants hacked his computer to access his screenplay, *Cleveland Strangler*.  (ECF No. 1, ¶ 151, PageID #54.)  Plaintiff received a certificate of registration from the United States Copyright Office for the screenplay.  (*Id.*, ¶ 146, PageID #51–52.)

18

Plaintiff bases his copyright claim on 17 U.S.C. § 506(a), which confers criminal liability for copyright infringement in certain circumstances. This statute does *not* authorize private suits seeking to establish civil liability. *See Kremer v. Reddit, Inc.,* No. 2:21-cv-00038, 2022 WL 3702092, at *4 (M.D. Tenn. Aug. 26, 2022), *report and recommendation adopted*, No. 2:21-cv-00038, WL 4241273 (M.D. Tenn. Sept. 14, 2022). A private citizen "has no authority to initiate a federal criminal prosecution [against] defendants for their alleged unlawful acts." *Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004) (citing, among authority, *Diamond v. Charles*, 476 U.S. 54, 64–65 (1986)). "[T]hat power is vested exclusively in the executive branch." *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974)). Accordingly, the Court construes Plaintiff's claim for copyright infringement as arising under 17 U.S.C. §§ 502 to 505.

Plaintiff alleges that Kim Kardashian, sporting a gray dress and jewelry, mimics the main character in *Cleveland Strangler*. (ECF No. 1, ¶ 152, PageID #54.) Also, he contends that an Instagram picture of Kim Kardashian in front of a car references Vernice Crutcher, the main character in *Cleveland Strangler*, who in real life tragically died in a hit-and-run. (*Id.*, ¶¶ 157–60, PageID #56–57.) According to the complaint, Kylie Jenner posted on Instagram in a brown and white bell-bottom jumpsuit, which Plaintiff claims demonstrates unauthorized access to his copyrighted material because in one of his *Cleveland Strangler* screenplays Vernice Crutcher appears as "Foxy Brown" and would wear similar clothes. (*Id.*, ¶¶ 161–62, PageID #58–59.)

19

A copyright claim requires proof of (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Direct evidence of copying is rare, so claimants often must make a showing through indirect evidence which requires (1) defendants' access to the allegedly infringed work and (2) a substantial similarity between the two works at issue. *Fogerty v. MGM Grp. Holdings Corp.*, 379 F.3d 348, 352 (6th Cir. 2004) (quoting *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999)). Access equates to a defendant's knowledge or a reasonable opportunity, not inferred through speculation, for access to the protected work. *See Ellis* 177 F.3d, at 506. For a work to be substantially similar, an "ordinary observer" must perceive the original, protected aspects and the alleged copy as substantially similar. *Kohus v. Mariol*, 328 F.3d 848, 856–57 (6th Cir. 2003).

Taking Plaintiff's allegations as true and construing them in his favor, as the Court must in the present procedural posture, the complaint fails to plead that any Defendant had access to Plaintiff's screenplays or actually had knowledge of them. At most, the complaint alleges that Mr. Newton "privately pitched" his project for *I Know What You Did to Me* by Instagram direct message to most of the Kardashian-Jenner Defendants, and that pitch included only the title page of the screenplay. (ECF No. 1, ¶¶ 39 & 40, PageID #7.) Similarly, Mr. Newton sent the title page of his *Cleveland Strangler* screenplay by direct message to Mrs. Knowles-Carter. (*Id.*, ¶ 212, PageID #85.) That level of contact or access to the screenplays impermissibly depends on speculation to support a claim of copyright infringement. Indeed, Plaintiff

does not even allege that any Defendant had access to his copyrighted materials.  Nor do the allegations support any inference to the contrary on the part of an ordinary, reasonable observer that the circumstances and coincidences of Defendants' social media posts.  Wearing a gray dress and jewelry apparently has meaning for Mr. Newton.  But these common fashion choices fail to support allegations allowing him to proceed with a claim of copyright infringement.

### II.C.  State-Law Claims

The balance of the claims that Plaintiff brings arise under State law.  "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).  Pursuant to 28 U.S.C. § 1367(c)(3), the Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."  Because comity to State courts is a substantial interest, there is "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011).

The Court should retain jurisdiction "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [the] concern over needlessly deciding state law issues." *Id.* (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)).  In exercising this discretion, the Court may consider the convenience to the parties and judicial economy in resolving the case. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000).  Here, these

factors present a rare case favoring the exercise of supplemental jurisdiction.  In particular, the numerous prior lawsuits that Mr. Newton has filed against some or all of these Defendants, judicial economy, and potentially bringing this dispute to a close counsel the exercise of supplemental jurisdiction in this case, outweigh the interest of comity, and overcome the strong presumption against the exercise of supplemental jurisdiction after adjudication of the federal claims.

For these reasons, the Court exercises its discretion to proceed to the State-law claims raised.  In doing so, the Court assumes that Ohio substantive law supplies the rule of decision for each claim for two reasons.  First, a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum State*, see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941), and Ohio choice-of-law principles generally apply Ohio law to tort claims of the type asserted.  Second, no party contends that any other State's law applies.

### II.C.1. Invasion of Privacy

A claim for invasion of privacy lies in four circumstances:  (1) intrusion on the plaintiff's seclusion or personal affairs that causes mental anguish or outrage; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation of the plaintiff's name and likeness for the defendant's advantage.  *Welling v. Weinfield*, 113 Ohio St. 3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, ¶¶ 17–20.

Plaintiff alleges Defendants invaded his right to privacy, but he does not specifically allege one of the four recognized instances of an invasion of privacy in his

complaint.  (ECF No. 1, ¶¶ 163–79, PageID #60–66.)  On the facts alleged, the first theory comes the closest to capturing or approximating the gist of his claim.

Plaintiff alleges that Defendants' Instagram posts reveal invasions of his privacy.  For example, Mr. Newton alleges that a Kim Kardashian posting a mirror selfie in a restroom at about the same time he was using the restroom provides direct evidence of voyeurism and hacking.  (*Id.*, ¶ 165, PageID #61.)  Plaintiff claims that Mrs. Knowles-Carter posted photographs in a silver dress as a reference to Plaintiff telling his coworker about the duct tape covering his smartphone's camera.  (*Id.*, ¶ 166, PageID #62.)  When Ms. Berry posted a photograph in a wicker chair with a caption reading "dust settles, I don't," Plaintiff saw a reference to a picture he had in a wicker chair with an ex-girlfriend and took the caption as intended for him, meaning that Ms. Berry would never settle a lawsuit.  (*Id.*, ¶¶ 170–74, PageID #63–65.)

But the complaint lacks any plausible allegation that any of these posts are the product of any person, let alone any Defendant, invading his privacy.  After all, Defendants are high-profile celebrities posting and active users and content creators on social media.  They intend to connect with their followers.  So it is not surprising that some of their content connected with Mr. Newton and spoke to him in the particular circumstances of his life at the time.  In any event, Plaintiff also fails to allege mental anguish or other harm of the type compensable on a claim for invasion of privacy.  Even in the highly unlikely and improbable event that any allegation at issue were true, Mr. Newton has clearly suffered and continues to live with serious

trauma that has cause him far greater mental and emotional anguish than any real or perceived action of any Defendant.

In his opposition to Defendants' motion to dismiss, Plaintiff refashions his claim as one for intrusion on seclusion.  (ECF No. 46, PageID #678.)  That is not what he pled, and a party may not amend a pleading in a brief.  In any event, construing his invasion of privacy claim as a claim for intrusion on seclusion makes no difference. This cause of action requires that a defendant caused a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."  *Welling,* 2007-Ohio-2451, at ¶ 15. The severity of the intrusion must shock an ordinary person to the point of emotional distress.  *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 635 (S.D. Ohio 2016) (quoting *Stonum v. U.S. Airways, Inc.,* 83 F. Supp. 2d 894, 905 (S.D. Ohio 1999)). Even taking the alleged facts in the light most favorable to Plaintiff, the complaint falls far short of stating a claim under this high standard.

For all these reasons, the Court concludes, as a matter of law, that Plaintiff fails to state a claim for either invasion of privacy or intrusion on seclusion against any Defendant.

### II.C.2. Tortious Interference

Plaintiff alleges that the Kardashian-Jenner Defendants and Mrs. Knowles-Carter tortiously interfered "with prospective economic advantage," meaning interference "with an informal relationship that could create an expectation of economic advantage."  (ECF No. 1, PageID #69.)  The Court is unaware of any such claim under Ohio law and its research has located no authority for such a claim.

24

Therefore, the Court construes this claim as one for tortious interference with a business relationship.  Under Ohio law, "to establish a claim for tortious interference with a business relationship, a party must show:  (1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) lack of a privilege; and (5) resulting damages."  *Bowshier v. Chrysler Fin. Corp.*, 144 F. Supp. 2d 919, 926 (S.D. Ohio 2001) (collecting authorities from Ohio and the Sixth Circuit).

Plaintiff alleges that he pitched the actress Thandiwe Newton to star in his true crime story, *Emerging Cleveland Strangler: The Vernice Crutcher Untold Story* and that she "**cryptically** respond[ed] favorably."  (ECF No. 1, ¶¶ 184–85, PageID #70–71.)  Also, Plaintiff recounts his interactions with Starburst Talent Agency, including his application for representation and the agency's "likes" of several of his Instagram posts.  (*Id.*, ¶ 189–192, PageID #73–77.)  He claims that, through Instagram posts, the Kardashian-Jenner Defendants and Mrs. Knowles-Carter thwarted his efforts with Thandiwe Newton and Starburst Talent Agency.  (*Id.*, ¶¶ 183–208, PageID #69–83.)

Taking his allegation as true and construing the complaint in his favor, Plaintiff fails to identify any contract he had with Thandiwe Newton or Starburst Talent Agency.  Also, he fails to identify an informal relationship with Thandiwe Newton, just a direct message through a social media account.  Similarly, he fails to plead a relationship with Starburst Talent Agency that would establish a relationship

that could support a tortious interference claim.  At most, Starburst Talent Agency liked Mr. Newton's Instagram posts.  It is not clear that Thandiwe Newton did even that much in response to his direct messages.  Accordingly, there was no relationship or sufficiently definite prospective relationship with Thandiwe Newton or Starburst Talent Agency with which the Kardashian-Jenner Defendants or Mrs. Knowles-Carter could interfere.  Accordingly, the Court dismisses this claim.

### II.C.3. Fraud and Fraudulent Misrepresentation

Plaintiff brings claims of fraud and fraudulent misrepresentation against Mrs. Knowles-Carter.  (ECF No. 1, PageID #84.)  Because the Court may not exercise personal matter jurisdiction over her, it does not reach the merits of this claim.  Accordingly, the Court dismisses these claims against Mrs. Knowles-Carter without prejudice.

### II.C.4. Intentional Infliction of Emotional Distress

Plaintiff brings a claim of intentional infliction of emotional distress against all Defendants.  (ECF No. 1, PageID #97.)  To prove a claim for intentional infliction of emotional distress, Ohio law requires a plaintiff to show "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt. Inc.*, 71 Ohio St. 3d 408, 410, 1994-Ohio-389, 644 N.E.2d 286, 289 (citation omitted).  A claim for intentional infliction of emotional distress must meet a reasonable-person standard.  That is, the emotional distress that the plaintiff suffers must be of such a nature that "no reasonable [person] could be expected to endure it." *Pyle v. Pyle*, 11

Ohio App. 3d 31, 34, 463 N.E.2d 98, 103 (8th Dist. 1983) (quoting Restatement (Second) of Torts § 46 cmt. j (1965)).  The Sixth Circuit notes the "emotional anguish" requirement is a demanding standard requiring emotional injury to be both severe and debilitating.  *180 Indus., LLC v. Brunner Firm Co. LPA*, No. 20-419, 2021 WL 4955268, at *2 (6th Cir. July 13, 2021) (quoting *Paugh v. Hanks*, 451 NE.2d 759, 765 (Ohio 1983)).

To support this claim, the complaint sets forth numerous Instagram pictures that Defendants posted and alleges that those photos, posted on their public accounts for millions of people to see, were threats directed at Mr. Newton.  (ECF No. 1, ¶¶ 243–54, PageID #97–102.)  Under the reasonable-person standard that Ohio law employs, these posts are not directed at Plaintiff and do not evince an intent to cause Plaintiff serious emotional distress.  For example, an Instagram collage that Mrs. Knowles-Carter posted features photographs of her making a peace sign and showing a closed door.  No reasonable person would construe this post, as Plaintiff does through the lens of his trauma, as Mrs. Knowles-Carter saying "good-bye" to Plaintiff's deceased cousin and a reference to a closed casket.  (*Id.*, ¶ 249, PageID #101–02.)  Plaintiff fails to allege that these messages are anything other than a high-profile celebrity sharing pictures on social media or were intended as messages directed at him—let alone ones intended to inflict emotional distress.

Even so, Plaintiff fails to plead any severe or debilitating emotional anguish as a result of these alleged threats and communications.  Whatever emotional damage the traumas Mr. Newton suffered has caused him presents a distinct injury for which

he cannot recover from these Defendants based on these allegations.  Accordingly, the Court dismisses Plaintiff's action for intentional infliction of emotional distress for failure to state a claim.

### II.C.5. Assault

Although Plaintiff brings his claim for assault against all Defendants under 18 U.S.C. §§ 113(A) and 2241 (ECF No. 1, PageID #103), these are federal criminal statutes that Plaintiff may not enforce.  Therefore, the Court construes this claim as one for assault under State law.

Ohio law defines assault as "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact."  *Gerber v. Veltri*, 203 F. Supp. 3d 846, 851 (N.D. Ohio 2016) (quoting *Smith v. John Deere Co.*, 83 Ohio App. 3d 398, 406, 614 N.E.2d 1148 (1993)).  For assault, the defendant must intend "to place another in apprehension of a harmful or offensive contact."  *Smith*, 83 Ohio App. 3d at 406, 614 N.E.2d at 1152 (citations omitted).

In the complaint, Plaintiff appears to allege that Defendants committed assault by killing his cousin and made "veiled death threats" directed at him.  (ECF No. 1, ¶¶ 255–95, PageID #103–19.)  To support these assertions Plaintiff cites numerous Instagram posts the Defendants made.  (*Id.*)  But these posts do not mention Mr. Newton in any way.  Still, Plaintiff argues That these posts directly communicate hidden messages to him.  For example, Plaintiff responded to an Instagram post by Mrs. Knowles-Carter.  Ten days later, Kim Kardashian posted a photo at the ocean, captioned "Just a reminder."  (*Id.*, ¶¶ 256–62, PageID #103–04.)

28

Plaintiff claims that the latter post mimics Plaintiff's hand wave emoji to Mrs. Knowles-Carter, a sort of "hidden message" or "reminder" of the "veiled threat of death by drowning." (*Id*., ¶¶ 258–62, PageID #104.) Next, Ms. Berry posted pictures of her on Instagram "below ground," which Plaintiff believes signifies a burial plot, and of her boyfriend in daisy sunglasses, which Plaintiff claims represents the expression "pushing up daisies." (*Id*., ¶ 265, PageID #106.) Posting a picture in a yellow top, Kylie Jenner captioned an Instagram post "yellow might be my new favorite color." (*Id*., ¶ 271, PageID #109.) Plaintiff interprets that post as code for "someone is dead." (*Id*. at ¶ 275.) Additionally, he takes the post as implicating Kylie Jenner in the death of his cousin and as a veiled threat of his own impending demise. (*Id*.)

Again, Defendants are among the most highly visible celebrities in the world. They maintain active social media presences. Invariably, their posts will speak to their followers in the different circumstances of their followers' lives. That is, after all, the point. So, it should not be surprising that these posts speak to Mr. Newton in the circumstances of his life. However, the complaint does nothing more than allege that famous people made general posts on social medial platforms. Without more, the complaint fails to show that Defendants directed their posts at Mr. Newton or that they made threats toward him. Accordingly, Plaintiff fails to state a claim on which the Court may grant relief.

### IIC.6. Conspiracy

Finally, Plaintiff brings a conspiracy claim against all Defendants. (ECF No. 1, PageID #67.) Plaintiff brings his claim under 42 U.S.C. § 1985(2). (*Id*.) In his reply,

he cites to a different statute, Section 2923.34 of the Ohio Revised Code.  (ECF No. 46, PageID #678.)

A claim under 42 U.S.C. § 1985(2) requires a conspiracy to obstruct the course of justice in State courts, and there must be some racial or otherwise class-based animus motivating the conspirators.  *Kush v. Rutledge*, 460 U.S. 719, 725–26 (1983). Plaintiff makes no allegations to support either of those elements.

Turning to State law, Section 2923.34 allows an individual to bring a civil action for corrupt activity.  A claim under this statute requires (1) "the commission of two or more of specifically prohibited state or federal criminal offenses"; (2) "a pattern of corrupt activity"; and (3) the defendant's participation "in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Eva v. Midwest Nat'l Mortg. Bank, Inc.*, 143 F. Supp. 2d 862, 898 (N.D. Ohio 2001) (citation omitted).  A civil action for corrupt activity requires an underlying act, the commission of two or more prohibited State or federal criminal offenses.  But the complaint fails to state a claim for any such underlying act.  Therefore, Plaintiff cannot sustain this claim either.

Because Plaintiff alleges "conspiracy," the Court also liberally construes him to bring a civil conspiracy claim under Ohio law.  A civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."  *Chescher v. Neyer*, 477 F.3d 784, 805 (6th Cir. 2007) (quoting *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 1998-Ohio-294, 700, N.E.2d 859, 868).  Additionally, an underlying act is required for

30

a civil conspiracy claim to succeed.  *Id*.  As with Plaintiff's claim under Section 2923.34, no underlying act supports Plaintiff's conspiracy claim.  Therefore, the Court dismisses this claim against all Defendants too.

## III.  Amendment

Pursuant to Rule 15(a)(2) and (d), Plaintiff moves for leave to amend his complaint.  (ECF No. 52.)  Defendants oppose the motion.  (ECF No. 54.)  Plaintiff filed his proposed amended complaint shortly after Defendants noted its absence in their opposition to the motion.  (*See* ECF No. 55.)  The Court denies leave to amend for several reasons.

Although Rule 15 directs courts to give leave to amend freely when justice so requires, Fed. R. Civ. P. (15)(a)(2), amendment is futile if the proposed amendment would not survive a motion to dismiss.  *Rose v. Hartford v. Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).  Such is the case here.  Plaintiff claims his amended complaint would achieve several things, including respond to Defendants' arguments, provide more case law in support of his reliance on social media posts under Rule 901(a) of the Federal Rules of Evidence, present evidence regarding his interactions with Cleveland Metroparks officers, and present additional Instagram photos that Defendants posted.  Relying on the proposed amended complaint and Plaintiff's motion, the Court finds Plaintiff's amendment futile because the amendment does not cure the pleading deficiencies already discussed.

Moreover, Plaintiff failed to comply with Section 3 of the Court's Civil Standing Order (available here), which requires that any motion for leave to amend attach a

redline showing the proposed changes and represent the position of the opposing parties. Plaintiff made no effort to comply with either of these requirements. Finally, Mr. Newton brought this case multiple times before in different courts. Through those earlier lawsuits, he has had multiple opportunities to rewrite his complaint. Justice does not require another. Accordingly, the Court **DENIES** Plaintiff's motion for leave to amend. (ECF No. 52.)

## IV.   Service on Kanye West

Previously, the Court detailed Plaintiff's efforts to serve Mr. West. (ECF No. 68.) In doing so, the Court denied Plaintiff's motion for alternative service and ordered Plaintiff to perfect service by July 10, 2024 under pain of dismissal without prejudice. (*Id.*, PageID #1179-80.) Plaintiff filed suit on January 5, 2024. (ECF No. 1.) On June 29, 2024, Plaintiff filed proof of service showing that Nicole Straus, an employee of Mr. West's company, "Yeezy," who is authorized to accept service, was personally served. (ECF No. 71.)

### IV.A.  Rule 4(e)(2)

Rule 4(e) provides the permissible methods of service. These include: (A) "delivering a copy of the summons and of the complaint to the individual personally"; (B) leaving a copy of the summons and complaint "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (C) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2).

Plaintiff served an agent of Mr. West's business, and the proof of service says that she is authorized to accept service. (ECF No. 71.) Although the docketed proof of service indicates that "personal service" was effected, nothing in the record shows that Mr. West was personally served. That is what Rule 4(e)(2)(A) requires. Perhaps Rule 4(e)(2)(C) makes service of this agent valid. But publicly available information with the California Secretary of State lists her as an agent for Mr. West's business, which is not a party to this lawsuit, not for Mr. West himself. Nor does the face of the proof of service provide any reason to believe that she is authorized to accept service on behalf of Mr. West. After all, the process server delivered the summons to her at Mr. West's business. Therefore, Plaintiff has failed to establish proper service over Mr. West.

### IV.B. State Law

Rule 4(e) also allows a plaintiff to serve the summons in any way permitted by the laws of the State where the district court is located (here, Ohio) or where service is made (California, in this case). Fed. R. Civ. P. 4(e)(1).

In Ohio, a plaintiff can serve an out-of-State defendant through personal service or by requesting that the Clerk initiate mail service. Ohio R. Civ. P. 4.3(B). Plaintiff relied on a service company to effectuate personal service. In Ohio, service of a person requires personal delivery of the summons and complaint to him. Ohio R. Civ. P. 4.3(B)(2). A "person" includes the individual himself as well as his personal representative. Ohio R. Civ. P. 4.3(A). Again, the agent on whom Plaintiff secured service is an agent for Mr. West's business. (ECF No. 71.) There is

no information in the record that would allow the Court to determine she is a personal representative authorized to accept service on his behalf either in fact or under the law. Accordingly, the Court finds that service was not perfected under Ohio law.

California has a statute authorizing a substitute for personal delivery of the summons and complaint. Cal. Civ. Proc. § 415.20. Under this statute, "a summons may be served by leaving a copy of the summons and complaint . . . in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box[.]" *Id.* § 415.20(b) (cross-referencing Cal. Civ. Proc. § 416.90). This statute might make service on Mr. West's agent valid—except that it goes on to require the plaintiff "thereafter [to mail] a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." *Id.* This alternative method of service under California law "is deemed complete on the 10th day after the mailing." *Id.* The record provides no evidence that Plaintiff completed service by mailing the summons and complaint as California law requires. Therefore, it is not effective under Rule 4(e)(1) either.

\*     \*     \*

Rule 4(m) provides that, "[i]f a defendant is not served" by the deadline set by rule or a court order, then the court "must dismiss the action without prejudice against the defendant." Fed. R. Civ. P. 4(m). Plaintiff has failed to serve Mr. West by the deadline that Rule 4(m) sets and by the later deadline the Court set for service.

34

(*See* ECF No. 68.) Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendant Kanye West.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to take judicial notice of the prior actions between the parties and their dispositions in the California State courts. (ECF No. 36.) In the interest of judicial economy, the Court **GRANTS** the motion of Defendant Shawn Carter to join the other Defendants' motions to dismiss. (ECF No. 49.) The Court **DISMISSES** Plaintiff's claims against Defendant Beyoncé Knowles-Carter and Defendant Shawn Carter **WITHOUT PREJUDICE** for lack of personal jurisdiction. (ECF No. 38; ECF No. 49.) The Court **GRANTS** Defendants' motion to dismiss (ECF No. 36) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendant Kanye West; therefore, the Court **DENIES** Plaintiff's application for a default judgment (ECF No. 72). Finally, the Court **DENIES** Plaintiff's request for leave to file an amended complaint. (ECF No. 52.) Based on these rulings, the Court **DENIES AS MOOT** Plaintiff's motion to set an initial case management conference (ECF No. 73).

**SO ORDERED.**

Dated: October 22, 2024

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

35